# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS
(Wichita Docket)

UNITED STATES OF AMERICA,

    Plaintiff,

v.              CASE NO.: 23-10047-01-JWB

TAMORI MORGAN,

    Defendant.

---

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT ON SECOND AMENDMENT GROUNDS
(Doc. 26)

---

APPEAR NOW the United States of America, by and through Aaron Smith, Assistant United States Attorney, and respectfully submit the following in response to the defendant's motion to dismiss Counts One and Two of the Indictment on Second Amendment grounds (Doc. 26).

1

I.     THE DEFENDANT'S MOTION

The defendant moves this Court to dismiss both Counts of the Indictment (Doc. 1), charging violations of 18 U.S.C. § 922(o)— possession of a machinegun. (Doc. 26 at 1-10.)[1] The defendant maintains that Section 922(o) "offends the history and tradition of the Second Amendment . . . by imposing a blanket prohibition on machineguns that is both facially unconstitutional and unconstitutional as applied to [him]." *Id*. at 1.

II.    ARGUMENT

   A. Legal Standard

The Second Amendment to the Constitution provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited; it does not allow every person "to keep and carry any weapons whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller,* 554 U.S. 570, 626 (2008).  In evaluating what limitations Congress can impose on citizens' Second Amendment rights, the Supreme Court has directed courts to ask two questions: (1) whether "the Second Amendment's plain text covers an individual's conduct," *New York State Rifle & Pistol Ass'n v. Bruen,*

---

[1] The National Firearms Act of 1934 ("NFA") defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" as well as "the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b).  That definition has been incorporated into Title 18 by reference. *See* 18 U.S.C. § 921(a)(24) ("The term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b)).").

2

142 S. Ct. 2111, 2129–30 (2022), and (2) if not, whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

> B. Section 922(o)'s Prohibition on the Possession of Machineguns is Constitutional.
>
> 1. Possession of Machineguns is Not Protected Under the Plain Text of the Second Amendment.

Section 922(o), which was enacted in 1986, bans the transfer or possession of a machinegun. It carves out exceptions for (1) the transfer to, or possession by, a person acting under authority of the United States, or (2) any lawful transfer or possession of a machinegun that was lawfully possessed before the statute's enactment.

The defendant attempts to mount a facial and as applied challenge to this statute. (Doc. 26 at 3.) A facial challenge is generally "the most difficult . . . to mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987), and the defendant's facial challenge here is particularly meritless given the Supreme Court's clear pronouncement that the Second Amendment's plain text does not cover machineguns. The defendant's as-applied challenge is similarly flawed as he is essentially making the same argument under both categories, namely, "whether stripping someone of their right to possess a machinegun without exception is consistent with the Nation's historical tradition of firearm regulation." (Doc. 26 at 5.)

In *United States v. Miller*, 307 U.S. 174, 178 (1939), the Supreme Court upheld against a Second Amendment challenge to two men's federal indictment for transporting an unregistered short-barreled shotgun in interstate commerce, in violation of the National Firearms Act, 48 Stat. 1236. Nearly 70 years later, in *Heller*, the Supreme Court affirmed

3

*Miller*, explaining that *Miller's* "basis for saying that the Second Amendment did not apply was . . . that the *type of weapon at issue* was not eligible for Second Amendment protection." 554 U.S. at 622 (emphasis in original). *Heller* itself characterized as "startling" the notion that "the [NFA]'s restrictions on machineguns . . . might be unconstitutional." *Id*. at 624. *Heller* concluded: "We . . . read *Miller* to say only that the Second Amendment does not protect those weapons *not typically possessed by law-abiding citizens for lawful purposes*, such as short-barreled shotguns." *Id*. at 625 (emphasis added). It continued: "That accords with the historical understanding of the scope of the right." *Id. Heller* returned to *Miller* at its conclusion of the opinion. It wrote:

> *Miller* said, as we have explained, that the sorts of weapons protected were those "*in common use at the time*." We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons."

554 U.S. at 627 (citing *Miller*, 307 U.S. at 179).

In other words, under *Heller*, the Second Amendment does not protect those weapons that were "not in common use at the time" of its passage and that were not "typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625, 627. And the defendant falls remarkably short of demonstrating how the plain text of the Second Amendment covers his possession of a machinegun as a firearm "in common use at the time" by private citizens.

Without question, nothing in *Bruen* disturbed *Miller* or *Heller*. Instead, both concurrences in *Bruen* emphasized the narrow scope of its holding. Justice Alito, concurring, wrote that "our holding decides nothing about who may lawfully possess a

4

firearm.  Nor have we disturbed anything that we said in *Heller* or [*McDonald v. City of Chicago, Ill.,* 561 U.S. 742 (2010)] about restrictions that may be imposed on the possession or carrying of guns." 142 S. Ct. at 2157.  Justice Kavanaugh, joined by Chief Justice Roberts in a separate concurring opinion, noted that as the Supreme Court had previously explained in *Heller* and *McDonald*, "the Second Amendment is neither a regulatory straitjacket nor a regulatory blank check" and that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (cleaned up).

Courts have likewise relied on *Heller* to conclude that machineguns fall outside the Second Amendment's scope.  *See*, *e.g., United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 141-44 (3rd Cir. 2016) (finding "the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes."); *Hollis v. Lynch*, 827 F.3d 436, 449-51 (5th Cir. 2016) (finding that machineguns do not receive Second Amendment protection because they are dangerous and unusual); *Hamblen v. United States*, 591 F.3d 471, 473-74 (6th Cir. 2009) (finding the right to keep and bear arms does not authorize an unlicensed individual to possess unregistered machine guns for personal use); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a ban on private possession of machine guns to be obviously valid."); *United States v. Fincher*, 538 F.3d 868, 873-74 (8th Cir. 2008) (finding machineguns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use); *United States v. Henry*, 688 F.3d 637, 639-40 (9th Cir. 2012) (finding that short of bombs, missiles, and biochemical agents, few weapons

are more dangerous than machineguns and thus the Second Amendment does not apply); *cf. United States v. Lucero*, 43 F. App'x 299, 301 (10th Cir. 2002) (Lucero, J. concurring) ("I am not persuaded that the semi-automatic rifle and fully automatic "machineguns" which defendant sold to federal agents, and which have been outlawed by federal legislation, are the type of arms subject to Second Amendment protection.").

The Fourth Circuit, sitting *en banc*, relied on similar reasoning to hold that semi-automatic assault rifles, like an AR-15 and large-capacity magazines, fell outside the Second Amendment. *See Kolbe v. Hogan*, 849 F.3d 114, 135-37 (4th Cir. 2017). The Fourth Circuit explained: "Are the banned assault weapons and large-capacity magazines "like" "M-16 rifles," i.e., "weapons that are most useful in military service," and thus outside the ambit of the Second Amendment? The answer to that dispositive and relatively easy inquiry is plainly in the affirmative." *Kolbe*, 849 F.3d at 136 (citing *Heller*, 554 U.S. at 627).

In light of binding Supreme Court precedent holding that the Second Amendment protects only those weapons "in common use" by private citizens at the time of its enactment—and the persuasive authority afforded by numerous federal appeals courts extending that conclusion expressly to machineguns—this Court should deny defendant's motion to dismiss both counts of the Indictment because the plain text of the Second Amendment does not cover the possession of machineguns.

2. <u>Prohibiting the Possession of Machineguns is Consistent with the Nation's Historical Tradition of Firearm Regulation.</u>

Even if this Court were to conclude that the Second Amendment's plain text protects the possession of machineguns, (it doesn't), Section 922(o) still does not violate the Second Amendment because the statute "is consistent with this Nation's historical tradition of firearm regulation." *Bruen,* 142 S. Ct. at 2129–30.

To assess "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding," *Bruen* contemplated two avenues of inquiry: (1) a "straightforward historical inquiry" to search for, most relevant here, historical regulations similar to the modern-day regulatory counterpart at issue or evidence that a comparable historical regulation was rejected on constitutional grounds; or (2) a "historical analogy," for instances where there is no such straightforward correspondence between the challenged law and predecessors. *Id.* at 2131-34.

For purposes of defendant's challenge to Section 922(o), the "straightforward historical inquiry" that *Bruen* described suffices. *Heller* explained—and *Bruen* did not disturb—that this nation's "historical tradition" includes "prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 637. For example, under English common law, "the offense of riding or going armed, with dangerous or usual weapons, [was] a crime." 4 W. Blackstone, Commentaries on the Laws of England 148–49 (1769). In the United States, too, courts long ago acknowledged that a man commits "an offence at common law" when he "arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." *State v. Langford*, 3 Hawks 381,

7

383 (NC 1824). For that reason, the Second Amendment encompasses only arms "of the kind in common use." *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179).

Indeed, the common-use limitation is consistent with the Second Amendment's prefatory clause: "The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at 624. *Heller* recognized that "[i]t may be objected that if weapons that are most useful in [modern] military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause" that refers to militias. *Id.* at 627-28. But *Heller* explained that "the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right." *Id.* at 628. *Bruen* did not change this aspect of *Heller*. Instead, *Bruen* reaffirmed *Heller's* finding that there is a "fairly supported" "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Bruen*, 142 S. Ct. at 2128 (citing 4 W. Blackstone, Commentaries on the Laws of England at 148-149: *Miller*, 307 U.S. at 179).

Considering *Heller*'s conclusion that our nation's historical tradition includes regulating dangerous and unusual firearms—a conclusion rooted in a variety of historical resources wholly unrefuted by defendant—this Court should reject defendant's constitutional challenge to Section 922(o) on historical grounds, assuming it does not already conclude that the plain text of the Second Amendment does not cover the possession of machineguns.

Finally, whereas machineguns are universally regarded as dangerous and unusual weapons, it is unsurprising that federal courts have continued to reject Second Amendment challenges to Section 922(o) following *Bruen*.  *See, e.g.*, *United States v. Sturgeon*, 2023 WL 6961618, at *3 (E.D. Kent. Oct. 20, 2023) (noting that "while no district court in the Sixth Circuit has had an opportunity to opine on the constitutionality of § 922(o), no other district courts have accepted a post-*Bruen* challenge to § 922(o)"); *United States v. Delafose*, 2023 WL 7368239, at *2 (W.D. La. Nov. 7, 2023) ("As with felon dispossession, the court can find nothing in *Bruen* that calls into question longstanding restrictions on ownership of particular types of dangerous weapons."); *United States v. Simien*, 655 F.Supp.3d 540 (W.D. Tex. Feb. 10, 2023) ("Based on this evidence, the Court finds machineguns are within the category of 'dangerous and unusual' weapons that do not receive Second Amendment protection and Simien's facial challenge to § 922(o), therefore, fails."); *United States v. Shelton*, 2023 WL 1812743, at *5 & n.2 (W.D. Pa. Feb. 8, 2023) (noting that Section 922(o) prohibits anyone, even law-abiding individuals, from possessing a machinegun); *United States v. Dixon*, 2023 WL 2664076, at *3 (N.D. Ill Mar. 28, 2023) ("Thus, *Miller*, *Heller*, and *Bruen* foreclose any challenge to the federal machinegun ban.  The Second Amendment simply does not extend to 'dangerous and unusual weapons.'"); *United States v. Kazmende*, 2023 WL 3872209, at *3 (N.D. Ga., May 17, 2023) (same); *DeWilde v. United States*, 2023 WL 4884582, at *6 (D. Wyo. July 17, 2023) (finding, after post-*Bruen* analysis, that "there is no Second Amendment right to possess a machinegun); *United States v. Lane*, 2023 WL 5663084, at *14 (E.D.V.A. Aug. 31, 2023) (holding that Section 922(o) withstands *Bruen* and that dangerous and unusual

weapons like machineguns do not fit within the plain meaning that the Supreme Court has ascribed to "Arms" covered by the Second Amendment); *United States v. Kittson*, 2023 WL 5015812, at *1 (D. Ore. Aug. 7, 2023) (joining the several courts who have found, post-*Bruen*, that machineguns are not protected by the Second Amendment).

## III.     CONCLUSION

The defendant's facial and as applied challenges to Section 922(o) fail because the Supreme Court has made clear that regulations of machineguns fall outside the Second Amendment; and even if this Court were to conclude that the Second Amendment's plain text protects the possession of machineguns, Section 922(o) still does not violate the Second Amendment because the statute "is consistent with this Nation's historical tradition of firearm regulation."  Thus, for the foregoing reasons the defendant's motion must be overruled.

> Respectfully submitted,
>
> KATE E. BRUBACHER
> United States Attorney
>
> S/Aaron L. Smith
> AARON L. SMITH, #20447
> Assistant U.S. Attorney
> 1200 Epic Center, 301 N. Main
> Wichita, Kansas 67202
> Telephone: (316) 269-6481
> Fax: (316) 269-6484
> E-mail: aaron.smith3@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of December 2023, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

David J. Freund
Assistant Federal Public Defender
Counsel for Defendant Morgan
david_freund@fd.org

                                        S/Aaron L. Smith
                                        AARON L. SMITH
                                        Assistant U.S. Attorney